1

2

3  Justin Abdollahi (pro se)
1200 N. Flores St. #111

4  West Hollywood, CA 90069
justin.n.abdollahi@gmail.com

5  (917) 310-8343

6



FILED

JUL 03 2024

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

7

8      **IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9                **San Francisco Division**

10  JUSTIN ABDOLLAHI,              Case No.
1200 N. Flores St #111         **ARB No. 2023-0042**

11  West Hollywood, CA 90069,      **ALJ No. 2022-TAX-00008**
**OASHA Case No 9-3290-22-428**



**CV-24-04026**

12          *Plaintiff,*

13  v.                             **COMPLAINT FOR VIOLATIONS OF
THE TAXPAYER FIRST ACT 26 U.S.C.**

14                                 **§ 7623(d), FALSE CLAIMS ACT
NUGS.NET ENTERPRISES, INC.,     RETALIATION 31 U.S.C § 3730(h),**

15  1383 9th Avenue                **CALIFORNIA WAGE PAYMENT AND
San Francisco, CA 94122,        COLLECTION ACT, CAL LABOR**

16                                 **CODE § 203 *et seq*., THE CALIFORNIA
WHISTLEBLOWER ACT, CA LABOR**

17  Serve resident agent:          **CODE § 1102.5 *et seq*., AND COMMON
LAW BREACH OF CONTRACT.**

18  Jon M. Richter,
1383 9th Avenue

19  San Francisco, CA 94122,

20          *Defendant.*          **JURY TRIAL DEMANDED**

21

22

23

24

25

26

27

28

COMPLAINT
CASE NO. _____

## COMPLAINT

Plaintiff Justin Abdollahi files this Complaint against Nugs.net Enterprises, Inc. ("Nugs.net") to recover damages and attorneys' fees for violations of the Taxpayer First Act 26 U.S.C. § 7623(d), and False Claims Act Retaliation 31 U.S.C § 3730(h).

### Jurisdiction and Venue

1.     This Court has subject matter jurisdiction over this action under the Taxpayer First Act 26 U.S.C. § 7623(d) because it is an action arising under the laws of the United States.

2.     This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a) because Defendants transact business in this judicial district.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(c) and 1395(a) because illegal acts occurred within this judicial district, Defendants are resident of this district, and because Defendants transact business within this judicial district.

4.     This Court has personal jurisdiction over Defendant because the Defendant does business in and is headquartered in this Division.

5.     This Court has jurisdiction over this action pursuant to 29 CFR § 1989.114 as this matter originates from the U.S. Department of Labor Administrative Review Board ("ARB") and the Secretary has not issued final decision within 180 days of the filing of the complaint which was September 10, 2023. Plaintiff is bringing de novo review of this matter to this Court.

COMPLAINT
CASE NO. _____

**Parties**

6.      Plaintiff is a resident of West Hollywood, California and is a former employee of Defendant.

7.      Defendant is a Delaware corporation with its principal place of business and headquartered located at 1383 9th Avenue, San Francisco, CA 94122.

**Statement of Facts**

8.      Abdollahi is a financial analyst and manager with extensive experience managing mergers and acquisitions and media streaming. After acquiring his MBA in finance, Abdollahi helped manage Comcast's merger and acquisition deal with NBC Universal and later worked as the Director of Content & Marketing FP&A for Viacom International, leading financial planning for the firm's growing international media and streaming business.

9.      Nugs.net is a Delaware corporation based in San Francisco, CA, whose primary product is the streaming and selling of recorded live music concerts. It has thirty-eight employees, including in several states outside of California. Due to new state-level laws in states such as California and Pennsylvania requiring sales taxes for online purchases, Nugs.net built a mechanism for applying such costs on top of its subscription fees and other purchase options and implemented it in or around 2017.

10.      Nugs.net hired Abdollahi as its vice president of finance and Chief Financial Officer ("CFO") in September 2021. He performed excellently, receiving praise from the executive team. Abdollahi created a five-year plan that was sensitive to company attribution and content elasticity, putting the firm in a particularly good position for an upcoming merger and acquisition. Jon Richter, Nugs.net's chief operating officer ("Richter") told Abdollahi that the

- 3 -

company had never had a five-year plan before. Because of Abdollahi's excellent performance the first two months on the job, Brad Serling, Nugs.net's chief executive officer ("Serling") gifted to Abdollahi two premium tickets to a live music concert on October 31, 2021 as recognition, appreciation, and thanks to Abdollahi for his work at the company.

11.     Abdollahi transitioned Nugs.net from a $25-28 million company to a $60-$80 million company largely through reconciling the company's purpose with how it had positioned itself on the market. Abdollahi positioned Nugs.net as a media company, not a production company, allowing the firm to merge with Fly Machine for $60-$80 million and allowing the combined entity to sell itself for $160 million to investors.

12.     During Abdollahi's tenure at the company he discovered, disclosed, investigated, and attempted to correct 3 instances of fraud at the company described in detail below 1) Monthly Tax-Free Payments to Defendant's Controller 2) Surplus Sales Tax Conversion Impacting Federal Tax Returns and 3) Illegal Use of PPP Funds.

13.     As a result of disclosing tax fraud concerns at the company Abdollahi suffered from hostile working conditions at Nugs.net leading Abdollahi to file a formal complaint with Schlesinger on December 3, 2021. Abdollahi pleaded with Schlesinger "[Abdollahi] cannot continue to be treated in a hostile and abusive manner by [Schlesinger]". Schlesinger did not stop, however.

14.     The following statement of facts recount at least 14 instances where Abdollahi provided information to Nugs.net and assisted in an investigation regarding underpayment of federal income tax.

- 4 -

**Statement of Facts – Monthly Tax-Free Payments to Defendant's Controller**

15.     In or around November 2021, Abdollahi discovered a tax-free $1,000 per month payment to Nugs.net's controller Jenna Schlesinger ("Schlesinger"). Abdollahi first learned about the tax-free payments while performing financial modeling at the company contained in filenames "Payroll.xls", "2021 Bonus.docx", and "Nugs.net executive compensation.docx".

16.     On or around November 29, 2021, Abdollahi reported his findings to Schlesinger and offered solutions to remedy the tax issue and not impact Schlesinger's take-home pay. Abdollahi informed Schlesinger, who had the power to stop and correct the fraud, that this method of accounting is fraudulent, leading the company to falsify its business records, file numerous fraudulent federal tax forms, and underpay its federal tax liability. Schlesinger dismissed Abdollahi's concerns and refused to discuss the matter further.

17.     Alongside conversations with Schlesinger, Abdollahi discussed with Richter the payroll tax fraud he uncovered. Richter's reply was that Abdollahi was "incorrect", and the company "pays its taxes".  Abdollahi and Richter discussed executive compensation and bonus for the 2021 fiscal along viewing related files "Payroll.xls", "2021 Bonus.docx", and "Nugs.net executive compensation.docx" amongst others. Abdollahi urged Richter to "correct this easy to solve issue, especially before the merger with Fly Machine."  Abdollahi informed Richter that this method of accounting is fraudulent, leading the company to falsify its business records, file numerous fraudulent federal tax forms, and underpay its federal tax liability.

18.     On or about the week of November 29, 2021 Abdollahi met with Richter and discovered that Richter was responsible for issuing under-the-table payments to both Richter and Serling as well as Schlesinger.

COMPLAINT
CASE NO. _____

19.     On or around December 2, 2021, as discussion progressed unsuccessfully and Schlesinger and Richter refused to discuss rationally the current situation or any remedy to the fraudulent tax reporting Abdollahi formally informed Schlesinger that "[Schlesinger's] actions were fraudulent, leading to falsifying tax returns, under paying tax liability, and that [Abdollahi] was required to disclose."

20.     Before the holiday break on December 17, 2021, Abdollahi formally reported the tax fraud to Richter through e-mail correspondence and verbally during meetings about compensation. Richter's reply over the phone call was that "[Abdollahi] was not supporting the company" and accused Abdollahi of "undermining the upcoming merger."

21.     At this point, on December 23, 2021, Nugs.net reduced Abdollahi's bonus for the 2021 benefit year to $7,500, versus of a minimum bonus of $10,000 per the employment contract, in retaliation for reporting tax fraud concerns at the company. The bonus was due on December 23, 2021, when other employees' bonuses were paid, and the Company provided no information to Abdollahi on the nature of the reasons behind the reduced bonus. When Abdollahi asked Richter why the bonus was short 25% Richter replied "we'll see" and then Richter terminated the call.  Abdollahi's bonus was reduced by the Company in retaliation for reporting tax fraud concerns at the company.

22.     In total, Abdollahi observed over three years' worth of checks paid to Jenna Schlesinger that were not issued by Nugs.net payroll provider, and instead were separate "manual" checks signed by Jon Richter. These payments were not part of the normal payroll procedures and evaded federal taxes across various governmental tax collecting agencies.

23.     The "manual" payments to Schlesinger were compensation to collude and allow the company to perpetrate tax fraud including the surplus sales tax conversion scheme and PPP

- 6 -

load fraud, each described in more detail below. Schlesinger's role at the company is controller and financial statement fraud is central to each of those crimes and since a controller is responsible for financial statement accuracy and financial reporting accuracy Schlesinger colluded and was an accomplice in perpetrating tax fraud at the company.

24.     Providing unreported money to employees is an attempt to evade or defeat tax under 26 U.S. Code § 7201, which carries fines of up to $100,000 (for individuals) or $500,000 (for corporations) and up to five years of imprisonment. Nugs.net provided unreported money to Jenna Schlesinger and is therefore in violation of 26 U.S. Code § 7201.

25.     Paying Schlesinger $1,000 payments in separate monthly checks, outside the payroll system used by Nugs.net, evaded the 2.9% Medicare tax, the 12.4% Social Security tax, paid by the Company and Schlesinger. These payments were not included as Employee Income on the Company's 941 Employer Quarterly Tax Return ("941 Tax Return"), form 940 Federal Unemployment Tax Return ("940 Tax Return"), Employees W-2 Wage Statement ("Employee W-2"), and subsequently the company under paid its employment tax liability. Abdollahi is certain of this assertion because he reconciled the Company books and records to payroll activity and corporate payroll tax payments and indeed, these payments were not reported on 941 Tax Return, 940 Tax Return, or Employee W-2, and the company did not pay the tax owed.

26.     Furthermore, Nugs.net improperly deducted the $1,000 monthly payments to Schlesinger as employee expenses on its book and records, and on its Corporate Federal 1120 Corporation Tax Return ("1120 Tax Return"),  which is expressly disallowed by the IRS (see below).  Nugs.net falsified its tax returns, underreported its corporate federal tax liability, and paid less tax than owed. Abdollahi is certain of this assertion because he reconciled the Company books and records to the 1120 Tax Return, and the company did not pay the tax owed.

In IRS Publication 15 Circular E Employer's Tax Guide the IRS states the definition of taxable income "Wages subject to federal employment taxes generally include all pay you give to an employee for services performed. The pay may be in cash or in other forms. It includes salaries, vacation allowances, bonuses, commissions, and taxable fringe benefits." In the IRS Publication 15-B Employer's Tax Guide to Fringe Benefits states "Any fringe benefit you provide is taxable and must be included in the recipient's pay unless the law specifically excludes it. Section 2 discusses the exclusions that apply to certain fringe benefits. Any benefit not excluded under the rules discussed in section 2 is taxable." The Fringe Benefits guide further describes in Section 2 a <u>maximum</u> exclusion of $2,000 in fringe benefits per year, and since Schlesinger's fringe benefit payments totaled $12,000 in annual benefit paid it was evident that the $12,000 annual payments to Schlesinger were unreported, was improperly accounted for and evaded taxation on Nugs.net 1120 Tax Return and on Jenna Schlesinger's personal tax returns.

**Statement of Facts – Surplus Sales Tax Conversion Impacting Federal Tax Returns**

27.     In or around November 2021, Abdollahi noticed that Nugs.net was charging customers a sales tax higher than allowed, remitting an amount less than owed to the state taxing authority, and pocketing the difference. Abdollahi determined that the surplus tax conversion was likely fraudulent since he knew that any surplus tax collection is, required by law, to be remitted to the appropriate state or federal taxing authority.

28.     Abdollahi also noticed how the fraudulent surplus tax conversion manifested itself on the financial statements. Nugs.net improperly retained the surplus cash of $200,000 - $300,000 annually and subsequently recorded sales tax expense on its financial statements. Nugs.net then took the $200,000 - $300,000 cash surplus to pay off cycle bonuses to Richter,

- 8 -

Serling, and Schlesinger, and recorded Compensation & Benefits expenses for the bonus payments.  If this were a compliant transaction, the surplus $200,000 - $300,000 annually would have been paid to the respective states (CA, NY, PA, and others), no sales tax expenses recorded on the financial statements, no cash payment to Richter, Serling, and Schlesinger as bonuses, and no bonus expenses reflected on the books.

29.      During the week of December 6, 2021 Abdollahi went to Nugs.net website to test the sales tax calculation contained on the website and billing system. Abdollahi put certain items in his cart, entered the address, and the website would compute the final bill to the customer. Abdollahi is aware of the different tax treatments of physical and digital goods across various states, so many tests were undertaken to arrive at the conclusion that the website was in fact over charging. For example, one such test is that the website would charge $2.89 for a $24.95 compact disc shipping to Los Angeles, CA.  In this example, the tax charged was 11.6% versus the allowable tax rate in Los Angles of 9.5% for compact discs shipping received in Los Angeles. This is a 2.1% error, and when extrapolated across an approximate $20 million dollar revenue stream and across affected product lines, states, etc. it made sense to Abdollahi that a $200,000 - $300,000 surplus tax conversion was probable and customers at large were being defrauded. See "Exhibit B" for detail.

30.      During the week of December 6, 2021, Abdollahi formally reported concerns regarding the surplus tax conversion issue in order to require Nugs.net to stop fraudulently overcharging customers for taxes that were then converted to income for the Company. Abdollahi notified Richter of the sales tax fraud alongside the payroll tax fraud issue regarding under the table payments to Schlesinger. Abdollahi also let Richter know that he "was required to disclose the surplus tax conversion issue for the upcoming merger with Fly Machine", and in

- 9 -

response Richter told him that Abdollahi "was not supporting the company" and accused Abdollahi of "undermining the upcoming merger."

31.     Subsequent, on December 23, 2021, Nugs.net reduced Abdollahi's bonus for the 2021 benefit year to $7,500, versus of a minimum bonus of $10,000 per the employment contract, in retaliation for reporting tax fraud concerns at the company. The bonus was due on December 23, 2021, when other employees' bonuses were paid, and the Company provided no information to Complainant on the nature of the reasons behind the reduced bonus. When Abdollahi asked Richter why the bonus was short 25% Richter replied "we'll see" and Richter then terminated the call. Abdollahi's bonus was reduced by the Company in retaliation for reporting tax fraud concerns at the company.

32.     Subsequent, on or around January 12, 2022, Abdollahi again reported the sales tax conversion issue to Richter and Schlesinger and asked what the next steps were to compliance. Schlesinger replied in the meeting, "there are many more important things to take care of instead of sales tax" and Jon replied "that's right" in a joking tone.

33.     Subsequent, on or around January 18, 2022 Abdollahi again reported the surplus tax conversion fraud to Richter, Schlesinger, Jeff Millborne (Nugs.net head of IT), and Jeff Gorman (Nugs.net head of customer service) to discuss next steps toward compliance. During this meeting the surplus tax conversion was discussed, as was the improper accounting treatment, fraudulent federal tax returns, and company needing to pay back taxes to the IRS and state taxing agencies. When Abdollahi asked Richter and Schlesinger why Nugs.net ignored the accountants report their response was that it "wasn't their top priority" and at least it "was a good problem to have" since it provided "extra cash flow for the company".  Abdollahi let the team know this method of accounting is fraudulent, leading the company to falsify its business records, file

fraudulent federal and state tax forms, and underpay its federal and state tax liability. Millborne and Gorman responded that "they knew about the issue" and they began to explain how "complicated the process was to fix and they did not have the time". Abdollahi offered to "take over the remittance of sales tax and could devise a method to properly calculate the tax" but was denied the opportunity to push the company into compliance.

34.     Subsequent, on or around January 31, 2022, Abdollahi e-mailed Richter to let him know he was required to disclose the surplus tax conversion issue for the merger and specifically the P&L information that was to be submitted to a 3rd party valuation company for the upcoming merger with Flymachine. Richter replied to Abdollahi the same day instructing Abdollahi **not** to record the sales tax conversion fraud correction on the Company's books and Abdollahi was asked to submit the fraudulent P&L statement to the company's 3rd party valuation service.

35.     Subsequent, on or around February 3, 2022 Abdollahi again reported the surplus tax conversion fraud and its implication on financial statements, federal tax forms, and IRS payments to Richter, Schlesinger, and the Company's external accountants Eiseramper LLP ("Eiseramper". Abdollahi notified the meeting attendees that "there is fraud here" and recounted the sales tax conversion issue. Richter was silent and the accountant responded by saying that "they knew about the issue and [they] wanted to further advise the company was not paying state taxes owed in nearly thirty states where it should have" due to the presence of remote employees or a certain amount of revenue including Washington, Illinois, and Florida. Abdollahi learned at that point that Richter and Schlesinger knew about this issue as well. As a follow up to this meeting, and to confirm that the Company understood its responsibilities regarding sales tax, its implications to federal taxation, and the liabilities that the company might owe, Eiseramper sent the meeting attendees a "sales tax nexus chart" clearly indicating the proper tax rates and

- 11 -

additional details. The thread of this email dated back to 2020 so Abdollahi knew that the Company was aware of the fraudulent nature of the designed surplus sales tax conversion mechanism for several years.

36.    One week later, on Feb 11, 2022, Richter informed Abdollahi that Nugs.net was terminating his employment, effective immediately. Richter did not offer any reason as justification for the termination.

37.    Nugs.net decided to do nothing about the surplus tax conversion issue and keep it going as long as possible because the additional cash flow pushed Nugs.net into slight profitability, and bonus payout amounts increased at the same rate as sales tax revenue.

38.    Prior to termination Abdollahi financially modeled nug.net business performance excluding the surplus tax conversion issue, within filename "nugs.net financial model 2-10.xlsx", "nugs.net financial model.xlsx", and "nugs.net+enterprises,+inc._Profit+and+Loss.xlsx", among others. Abdollahi was creating what's called a "Proforma" in corporate finance, in this case, reporting Nugs.net profit and loss ("P&L"), and ultimately corporate valuation, without the fraudulent surplus sales tax conversion.

39.    Abdollahi determined that 3 out of the past 5 years cash flow position of the company would have been negative excluding the sales tax fraud, which would have communicated a net loss on the profit & loss statement. The Proforma P&L was very problematic for Nugs.net. Specifically, Richter and Nugs.net were evaluating a sales price for the company of $80 million as offered by Fly Machine versus a lower amount should Richter and Nugs.net accept and submit the proforma P&L and summit to Fly Machine for purposes of valuing the purchase price for Nugs.net. The motivations for Richter and Nugs.net executive team was to cover up the sales tax issue, quietly sell the company and the embedded tax fraud

issue to Fly Machine, and profit for doing so. Nugs.net knew about the tax issue and decided not to act or correct.

40. Collecting **state sales tax** and not accounting for same and paying them over is a **violation of federal tax law** when the converting party fails to report the same as income (Emphasis Added). *United States v. Dixon,* 698 F.2d 445, 446 (11th Cir. 1983) (gross income includes proceeds from investment fraud scheme); *Moore v United States*, 412 F.2d 974, 978 (5th Cir. 1969) (income includes gains from illegal activities).

41. Recording sales tax as expense on the company's books and records is a violation of federal Tax rules in Publication 535 Business Expenses, and when the company did not immediately remit the surplus cash of $200,000 - $300,000 annually to the federal government, or state taxing authorities, it violated 26 U.S.C §6 655. By keeping the surplus tax conversion inside the company, recording as sales tax expense, and then paying the additional cash bonuses to Serling, Richter, and Schlesinger, is a clear violation of this code.

42. In 2021 for example, the company reported approximately $300,000 in **expense** on the corporations 1120 Tax Return, when it should have reported **income** of $300,000 as required by *United States v. Dixon* "Collecting **state sales tax** and not accounting for same and paying them over is a violation of **federal tax law** when the converting party fails to report the same as income" (emphasis added). The same occurrences of recording sales tax expense and no sales tax income were present in the 2019 and 2020 federal 1120 Tax Return.

43. In Publication 535, Business Expenses published by the IRS it defines what expenses can and cannot be deducted by a business and clearly states "Do not deduct state and local sales taxes imposed on the buyer that you must collect and pay over to the state or local government. Also, do not include these taxes in gross receipts or sales." Nugs.net violated the

- 13 -

guidance in the IRS publication and therefore violated 26 U.S.C §6 655 by falsifying IRS tax returns in years 2021, 2020, and 2019 because each of these years has the sales tax fraud being reported as **expenses** on the corporate tax submissions to the IRS.

44.    The surplus state sales tax conversion fraud __does, in fact,__ have an impact to federal tax returns. Nugs.net failed to pay accurate estimated income tax at the federal level as governed by 26 U.S.C §6 655 in 2021, 2020, and 2019 by deducting sales tax expense on its Federal 1120 Tax Return and then subsequently using the surplus tax conversion fraud mechanism to pay Serling, Richter, and Schlesinger off cycle bonuses. Abdollahi is certain of this assertion because he reconciled 2020, and 2019 business activity against the IRS tax returns in the respective years and confirmed the fraudulent reporting to the IRS. Abdollahi also had a conversation with Nugs.net accountant at Eiseramper and confirmed his assertion that the fraudulent sales tax conversion issue was in fact reported improperly on the 1120 Tax Return.

### Statement of Facts – Illegal Use of PPP Funds

45.    In or around January 2022, as part of financial statement preparation, Abdollahi reviewed Nugs.net's financial handling of the loan proceeds it received when it participated in the federal Paycheck Protection Program ("PPP") in an analysis with filename "ppp.xlsx". Abdollahi looked at the Company payroll for 2019, 2020 and 2021 and determined what payroll by employee was over the $100,000 limitation provided by the CARES Act and the subsequent Small Business Administration Clarification.

46.    Abdollahi determined that the amounts claimed as Payroll on the application for PPP loan forgiveness was falsified and the total amount of improperly forgiven loans totaled $857,395. Salary and bonuses paid to Richter and Serling more than $100,000 across two PPP

- 14 -

loans totaled were ineligible for forgiveness. Across two years, Nugs.net paid off cycle bonuses to Serling and Richter that amounted to roughly $850,000, a similar amount to the loan proceeds of $857,395. Since the bonuses were off cycle Abdollahi related the sources of loan proceeds being used for executive bonuses which is a clear a violation of the forgiveness criteria at 15 U.S.C. § 636(a)(37)(J).

47.     During the period staring on or about January 31, 2022 through February 10, 2022 Abdollahi notified Richter that the Company was required to disclose the misappropriation of PPP funds and for the merger by adjusting the Proforma P&L, as well as the need to amend prior year federal tax returns. Abdollahi explained to Richter the heightened awareness for financial statement accuracy due to purpose of using the financials statements to value the company for the upcoming merger.

48.     On or around January 31, 2022, Abdollahi e-mailed Richter to let him know he was required to disclose PPP Fraud issue for the merger and specifically the P&L information that was to be submitted to a 3rd party valuation company for the upcoming merger with Fly Machine. Richter replied to Abdollahi the same day instructing Abdollahi not to record the PPP Fraud correction on the Company's books and Abdollahi was asked to submit the fraudulent P&L statement to the company's 3rd party valuation service. Since this correction would have in turn adjusted the Company's Federal 1120 Tax Return, Richter prevented the tax return correction as well.

49.     On February 10, 2022 Abdollahi informed Richter, that this method of accounting for PPP loan forgiveness is fraudulent, leading the company to falsify its business records, file numerous fraudulent tax forms, and underpay its tax liability.

COMPLAINT
CASE NO. _____

50.     One day later, on Feb 11, 2022, Richter informed Abdollahi that Nugs.net was terminating his employment, effective immediately. Richter did not offer any reason as justification for the termination.

51.     The illegal use of federal PPP loan funds constitutes tax evasion under 26 U.S.C. § 7201 and the scheme that Schlesinger and Richter devised was a willful attempt to evade or defeat tax. Nugs.net had a total of $857,395 in PPP loans improperly forgiven during 2021.

52.     A properly forgiven PPP loan is excluded from business's taxable income, an improperly forgiven loan should be included in taxable income (See generally I.R.S. Chief Couns. Mem 2002237010 (Aug. 19, 2022) at 3-4). Nugs.net did not include improperly forgiven PPP loan funds of approximately $857,395 in taxable income on its 1120 Federal Tax Return for 2021 or 2020 and is therefore in violation of 26 U.S.C. § 7201. Abdollahi is certain of this assertion because he reconciled the Company's books and records to 1120 Tax Return for 2020, and confirmed with Nugs.net external accountants Eiseramper that Nugs.net did not record any income related to PPP loans improperly forgiven on the 1120 Tax Return.

53.     $857,395 should have been recorded as income on the 1120 Tax Return and it was not, and therefore is a violation of 26 U.S.C. § 7201.

**Statement of Facts – Hostile Work Environment and Nugs.net Manufacturing False Business Records**

54.     Nugs.net intentionally created intolerable and hostile working conditions for Abdollahi starting immediately following Abdollahi's reporting of tax fraud at the company. Abdollahi was an excellent employee, receiving praise from executives and gifts from Serling on October 31, 2021.

55.     As Abdollahi began to discuss the Monthly Tax-Free Payments to Defendant's Controller matter with Schlesinger early to mid-November, she became hostile, often times yelling at Abdollahi and reacted with frustration and dismissed Abdollahi's concerns. This led Abdollahi to file notice with Schlesinger on December 3, 2021 to ask her to stop her abuse. This e-mail was Abdollahi's formal submission of a hostile working environment with Nugs.net. Abdollahi pleaded with Schlesinger "[Abdollahi] cannot continue to be treated in a hostile and abusive manner by [Schlesinger]". Schlesinger did not stop, however.

56.     Thereafter Schlesinger and Richter began excluding Abdollahi from key meetings and treated Abdollahi with a general tone of hostility and distance.

57.     Subsequent, on or about January 6, 2022 Abdollahi notified Richter and Serling that the Q4 2021 financial results were below forecast due to "higher churn and material headwinds put in the business during the quarter". "Churn" in a streaming business means when a paying subscriber cancels their video subscription.  Richter and Serling were not pleased and asked Abdollahi to "make the numbers look better". That is, Richter and Serling were asking Abdollahi to falsify business records. Abdollahi refused as it would have been a violation of 15 U.S.C. § 77q to provide knowingly false information to investors. Abdollahi informed Richter and Serling that the financials still needed adjustments related to record tax liabilities related to "sales tax fraud" and "under the table payments to [Schlesinger]" so Abdollahi suggested a footnote to the financial statements describing the estimated amount of Federal tax liability. That same day, during an investor call, Abdollahi reported truthful churn and financial performance to potential investors Saltwater Capital ("Saltwater"). Serling interrupted Abdollahi and Serling began to recount falsified churn and financial information to Saltwater. When Serling interrupted Abdollahi to include an untrue statement of a material fact Serling violated 15 U.S.C. § 77q and

is liable under 15 U.S.C. § 77l. Since Abdollahi informed Serling and Richter of the actual financial performance numbers prior to the Saltwater call, Serling and Richter are certain to have known the truth, and are therefore in violation of 15 U.S.C. § 77q and are liable under 15 U.S.C. § 77l. It was clear to Abdollahi then, that Serling and Richter were focused on telling absolute lies about the Company's performance to profit from falsified business records.

58.     Subsequent, on or about January 20, 2022, Abdollahi met with Serling and Richter to discuss the financial statements Abdollahi prepared for year-end 2021. Richter and Serling were not pleased and asked Abdollahi to "make the numbers look better". That is, Richter and Serling were asking Abdollahi to falsify business records, as they had done in the past. Abdollahi refused as it would have been a violation of 15 U.S.C. § 77q to provide knowingly false information to investors. That same day, during an investor call with LionTree LLC ("Lion Tree") and Apollo Global Management Inc. ("Apollo"), Abdollahi presented the financials including actual Q4 2021 financial underperformance and including truthful churn performance. Serling and Richter, once again, interrupted Abdollahi and began to recount falsified churn and financial information to Lion Tree and Apollo. When Serling and Richter supplanted false or fraudulent claims to investors, they included an untrue statement of a material fact which is a violation of 15 U.S.C. § 77q and are liable under 15 U.S.C. § 77l. Since Abdollahi informed Serling and Richter of the actual financial performance numbers and information prior to the Lion Tree and Apollo call, Serling and Richter are certain to have known the truth and are therefore in violation of 15 U.S.C. § 77q and liable under 15 U.S.C. § 77l.

59.     At this point, Nugs.net no longer sent Abdollahi invitation to merger and acquisition meetings and excluded Abdollahi on investor related e-mail correspondence. Also at

this point, Schlesinger retained her brother's accounting firm to help prepare fraudulent financials for the upcoming merger with Fly Machine and excluded Abdollahi from the process.

60.     Subsequent, on or about February 8, 2022 Abdollahi created and presented a budget presentation for Nugs.net marketing department. Richter interrupted Abdollahi repeatedly during this meeting often yelling questions at him, and Richter called Abdollahi's numbers "awful," "junk," and insisted the numbers "don't make sense". Abdollahi was not given an opportunity to answer Richter's questions or reply fully during the meeting because of Richter's hostility and yelling. It was clear to Abdollahi then, that Richter was focused primarily on making the working environment hostile and abusive, and that Richter was unwilling to listen to Abdollahi or discuss rationally any financial matter at the Company.

61.     Subsequent, on the same day on or about February 8, 2022 Richter and Schlesinger met with Abdollahi to discuss the alleged discrepancy in numbers and the hostile tone Richter displayed toward Abdollahi. Richter informed Abdollahi that Schlesinger "audited [Abdollahi's] numbers and [found errors]". Abdollahi has maintained a flawless execution of financial reporting and analysis for his nearly 15-year career up to this point, so Abdollahi was shocked at the mere allegation. As the conversation progressed it was evident that Schlesinger's audit was flawed. Abdollahi informed Richter and Schlesinger that "[Schleger] was comparing FY22 forecast to FY21 actual results, which was not a correct comparison, and of course they would not match since they are from two different years." Abdollahi then pulled up the source for both FY22 forecast and FY21 actuals to prove that Abdollahi's numbers were in fact accurate, and then showed Schlesinger and Richter that the presentation to the Marketing team hours prior was accurate as well. Both Schlesinger and Richter immediately reduced their hostile tone, Schlesinger provided no additional comments and Richter told Abdollahi "[Abdollahi] was

right and [Richter] sees where [Abdollahi] is coming from." Abdollahi then asked Richter "even if [Richter] thought there was a mistake, why would [Richter] yell at [Abdollahi], or anyone for that matter, in such a hostile tone." Richter did not reply and instead terminated the call. It was clear to Abdollahi then, that Schlesinger was manufacturing false evidence and fabricating false information against Abdollahi, and that Richter was asking Schlesinger to do so, just like Richter asked Schlesinger to do with Schlesinger' brother's accounting firm in manufacturing false financial statements for the purposes of an interstate equity securities transaction.

62.     Subsequent, on or about February 10, 2022 Abdollahi reported to Serling that in response to his raising the tax fraud issues Richter had been hostile to him, demeaned him, and reduced his bonus. Abdollahi again notified Serling of the illegal tax conversion issue, and Schlesinger tax-fee payments issue and described them both as fraudulent leading to falsified federal tax returns and underpayments to the IRS. Serling thanked Abdollahi for his disclosure and assured Abdollahi that "[Serling] would talk to [Richter]" to correct Richter's hostility, yelling, and verbal abuse toward Abdollahi.

63.     The next day, on February 11, 2022, Abdollahi sent the following email to Serling. See Exhibit "A" for detail.

COMPLAINT
CASE NO. _____

**From:** Justin Abdollahi Justin.Abdollahi@nugs.net
**Subject:** Notification of fraud and hostile work environment
**Date:** February 11, 2022 at 11:30 AM
**To:** Brad Serling brad@nugs.net, Justin Abdollahi justin.n.abdollahi@gmail.com



Brad,

After speaking with you yesterday it became clear to me that you may not be fully aware of material issues regarding your business. I'll jump straight to the point:

I uncovered numerous instances of fraud at the company regarding Controller unreported earnings (paid under the table), sales tax fraud and non-compliance, and PPP loan misuse totaling over $4m (excluding penalty and fees). This fraud is mainly due to below-par accounting/controllership and collusion between Jenna and Jon for personal profit. When discussing solutions with Jenna and Jon they became hostile, abusive, and have treated me very poorly since I first brought this instance to light on 12/2. Since this time, I have continued to be yelled at, verbally abused, and other actions that in total describe a hostile work environment. I have brought up this abusive environment to Jon no less than 4 times, however he has become the lead abuser in the last several weeks, thus necessitating your involvement.

Brad, I am letting you know this is illegal activity, to retaliate against me via abuse and hostility, to reduce my bonus payout so severely, to exclude me from meetings, and to take further negative action against me. My actions are considered protected activity under OSHA and whistleblower regulations.

My goal is not to whistle blow or raise a lawsuit but to have open and honest communication with Jon and you regarding the circumstances affecting the entire executive team and to shape a clear path forward with mutual respect. I am not sure why Jon, Mary, etc. have not been able to schedule a meeting when I have asked so many times over 3 weeks. I am brining this to your attention now because your business partner Jon, is about to continue actions of retaliation and will thus accelerate an already pressured situation. My fear is that his next action will force my hand and will set a motion of reactions that are not necessary to come to a mutual agreement.

I urge you to help Jon reconsider his next step and to meet with the executive team next week for a calm, open, and honest dialogue.  Thank you very much.

Respectfully yours,

Justin

64.     One hour later, the same day, Richter informed Abdollahi that Nugs.net was

terminating his employment, effective immediately. Richter did not offer any reason as to the

justification for the termination.

65.     Abdollahi has exhausted administrative remedies related to this matter through

OSHA and the U.S. Department of Labor. This matter has aged over 180 days in the U.S.

- 21 -

Department of Labor Administrative Review Board and Plaintiff is bringing de novo review of this matter to this Court.

66.    Abdollahi has mitigated damages to the best of his ability through rigorous interviewing after Nugs.net unlawful termination. Abdollahi obtained full time employment on or about November 22, 2022.

67.    As a result of Nugs.net's illegal actions, Abdollahi has suffered substantial monetary damages, emotional distress, and harm to his professional reputation, and he will continue to sustain damages into the foreseeable future.

COMPLAINT
CASE NO. _____

## COUNT I
### Taxpayer First Act Retaliation
### 26 U.S.C. § 7623(d)(1)(A)

68.     Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

69.     The Taxpayer First Act, 26 U.S.C. § 7623(d)(1)(A), states that, "No employer… may discharge… harass, or in any other manner discriminate against an employee in the terms and conditions of employment (including through an act in the ordinary course of such employee's duties) in reprisal for any lawful act done by the employee…to provide information, cause information to be provided, or otherwise assist in an investigation regarding underpayment of tax or any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws or any provision of federal law relating to tax fraud, when the information or assistance is provided to… a person with supervisory authority over the employee, or any other person working for the employer who has the authority to investigate, discover, or terminate misconduct." 26 U.S.C. § 7623(d)(1)(A).

70.     Nugs.net is an employer under the TFA.

71.     Abdollahi was an employee under the TFA.

72.     Abdollahi provided information to the executive team at Nugs.net, and therefore provided information to Nugs.net, about violations of internal revenue laws relating to tax fraud, when he disclosed that he believed Nugs.net was publishing false statements in federal payroll tax forms, and federal income tax forms, relating to 1) Monthly Tax-Free Payments to Defendant's Controller, 2) Surplus Sales Tax Conversion Impacting Federal Tax Returns and, 3) Illegal Use of PPP Funds.

- 23 -

73. Nugs.net terminated Abdollahi's employment after discriminating against him in the terms and conditions of employment through harassment and reducing his bonus, in reprisal for Abdollahi's disclosures.

74. Abdollahi has been damaged through loss of employment, income, benefits, as well as loss of professional reputation. Abdollahi also suffers from emotional distress from his termination.

## COUNT II
### False Claims Act Retaliation
31 U.S.C § 3730(h)

75. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as restated herein.

76. Abdollahi engaged in protected conduct when he disclosed the PPP Loan fraud issue to Serling on February 11, 2022. Abdollahi did so in furtherance to stop Nugs.net's continuing violation of the False Claims Act through its fraudulent use of PPP Loan forgiveness to enrich its executives.

77. Nugs.net, through Serling, knew of Abdollahi's protected activity.

78. Nugs.net were motivated, at least in part, to terminate Abdollahi because of his protected activity due to the very close temporal proximity between his protected activity and his termination of one hour.

79. Abdollahi has been damaged through loss of employment, income, benefits, as well as loss of professional reputation. Abdollahi also suffers from emotional distress from his termination.

- 24 -

1
2

## COUNT III
### Retaliation under California Whistleblower Act
### CA Labor Code § 1102.5 *et seq.*

3      80.     Plaintiff reasserts and incorporates by reference all paragraphs set forth above as

4   if restated herein.

5      81.     "[S]ection 1102.5 prohibits an employer from retaliating against an employee for

6
   sharing information the employee **has reasonable cause to believe** ... discloses a violation of

7
   state or federal statute or of a local, state, or federal rule or regulation with a government agency,

8
9   with a person with authority over the employee, or with another employee who has authority to

10  investigate or correct the violation." *See Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th

11  703 (2022) (emphasis added).

12     82.     Nugs.net is an employer under the CWA.

13     83.     Abdollahi was an employee under the CWA.

14
15     84.     Abdollahi provided information to the executive team at Nugs.net, and therefore

16  provided information to Nugs.net, about his reasonable belief of Nugs.net's violations the TFA,

17  the False Claims Act, and the California Wage Payment and Collection Act.

18     85.     Nugs.net terminated Abdollahi's employment after discriminating against him in

19  the terms and conditions of employment through harassment and reducing his bonus, in reprisal

20  for Abdollahi's foregoing disclosures.

21     86.     Abdollahi's disclosures were a contributing factor in Nugs.net's decision to

22  terminate him, and Nugs.net will be unable to provide clear and convincing evidence that it

23
24  would have terminated him in the absence of protected disclosures.

25
26
27                                          - 25 -

28

1   87.   Abdollahi has been damaged through loss of employment, income, benefits, as

2   well as loss of professional reputation. Abdollahi also suffers from emotional distress from his

3   termination.

4

**COUNT IV**
**California Wage Payment and Collection Act**
**Cal Labor Code § 203** *et seq.*

5

6

7   88.   Plaintiff reasserts and incorporates by reference all paragraphs set forth above as

8   restated herein.

9   89.   To prevail on a cause of action for failure to pay wages, an employee must show

10  he was owed wages by his employer and was not given those wages when due or immediately

11  upon his termination.

12  90.   Under the California Wage Payment and Collection Act, bonuses, executives, and

13  vacation hours all count as wages.

14

15  91.   Nugs.net, the employer, per its contract with Abdollahi, the employee, a certain

16  number of vacation hours and a bonus that would represent 15% through 30% of that salary.

17  92.   Upon his termination, Abdollahi did not receive his vacation hours nor his

18  remaining bonus.

19

20

21

22

23

24

25

26

27                                  - 26 -

28

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Justin Abdollahi, pray that judgment be entered against Defendants for violation of the foregoing statutory causes of action as follows:

    a)    Economic damages in the amount of $789,076 which represents lost compensation, benefits, back pay, pre-judgement interest, and reasonable attorney fees. Pursuant to 26 U.S.C. § 7623(d)(1)(A), economic damages include 200 percent of the amount of back pay and 100 percent of all lost benefits, with interest as well as liquidated damages for emotional distress and harm to professional reputation.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules of this Court, Plaintiff demands a jury trial as to all issues so triable.

Respectfully submitted,

By: _____

Justin Abdollahi
1200 N. Flores St #111
West Hollywood, CA 90069
justin.n.abdollahi@gmail.com
(917) 310-8343

- 27 -

COMPLAINT
CASE NO. _____

1

## EXHIBIT A – E-MAIL TO NUGS.NET

2

3

**From:** Justin Abdollahi Justin.Abdollahi@nugs.net 
**Subject:** Notification of fraud and hostile work environment
**Date:** February 11, 2022 at 11:30 AM
**To:** Brad Serling brad@nugs.net, Justin Abdollahi justin.n.abdollahi@gmail.com

4

5

Brad,

6

After speaking with you yesterday it became clear to me that you may not be fully aware of material issues regarding your business.  I'll jump straight to the point:

7

8

I uncovered numerous instances of fraud at the company regarding Controller unreported earnings (paid under the table), sales tax fraud and non-compliance, and PPP loan misuse totaling over $4m (excluding penalty and fees).  This fraud is mainly due to below-par accounting/controllership and collusion between Jenna and Jon for personal profit.  When discussing solutions with Jenna and Jon they became hostile, abusive, and have treated me very poorly since I first brought this instance to light on 12/2.  Since this time, I have continued to be yelled at, verbally abused, and other actions that in total describe a hostile work environment.  I have brought up this abusive environment to Jon no less than 4 times, however he has become the lead abuser in the last several weeks, thus necessitating your involvement.

9

10

11

12

13

Brad, I am letting you know this is illegal activity, to retaliate against me via abuse and hostility, to reduce my bonus payout so severely, to exclude me from meetings, and to take further negative action against me.  My actions are considered protected activity under OSHA and whistleblower regulations.

14

15

My goal is not to whistle blow or raise a lawsuit but to have open and honest communication with Jon and you regarding the circumstances affecting the entire executive team and to shape a clear path forward with mutual respect.  I am not sure why Jon, Mary, etc. have not been able to schedule a meeting when I have asked so many times over 3 weeks.  I am brining this to your attention now because your business partner Jon, is about to continue actions of retaliation and will thus accelerate an already pressured situation.  My fear is that his next action will force my hand and will set a motion of reactions that are not necessary to come to a mutual agreement.

16

17

18

19

I urge you to help Jon reconsider his next step and to meet with the executive team next week for a calm, open, and honest dialogue.   Thank you very much.

20

21

Respectfully yours,

22

Justin

23

24

25

26

27

COMPLAINT

28

CASE NO. _____

**EXHIBIT B – NUGS.NET CHECKOUT**

COMPLAINT
CASE NO. _____